May it please the Court, Albert Chao on behalf of the petitioner Mei Liu. Your Honors, this is an asylum claim based upon religious persecution. The petitioner was persecuted for attendance at an illegal Christian house church in China, wherein the police had arrested her and detained her, physically assaulted her. And the main issue in this case is adverse credibility. And the main reason for the adverse credibility finding was an omission in her original asylum application and statement. In her original asylum application, in the statement, she does mention that she was arrested and then detained and then interrogated, but she did not write in the details regarding any physical harm or abuse that she may have suffered while she was in detention. What was, before you go into the detail, what were the timing of the sequence of the two declarations, the original and then the amended one? She had filed an original asylum application with the asylum office, wherein she had an interview with an officer. And after it was referred to the court, at a later date before the actual final merits hearing of the case, she filed a supplemental declaration wherein she added some more detail of the case. Yes, and that's descriptive. What were the time lapses between those two events? You mean in terms of, like, months or years? Time, however you measure time. I believe it was at least two years, I believe. Okay. Was she counseled on both of those declarations? Yes, Your Honor, she was. Although I will say that the first original asylum application that was filed with the asylum office, the attorney that was representing her at the time has been disciplined by the state bar. I'm not quite sure if he was suspended or disbarred, but it's one of the two. And so I do believe that that certainly should be taken into consideration, and this was something, of course, that the judge didn't know at the time that the judge made his original decision. And so she, was she counseled at the hearing? Yes, she was. And that was the one, the counsel who prepared the supplemental? Right, exactly. And, Your Honor, I mean, I believe what is on point in this case is the case Lopez-Reyes v. INS, and that is 79 F. 3rd, 908 9th Circuit, 1996. In that particular case, the applicant for asylum, he had written in his asylum statement that he was stopped by guerrillas, he was asked to join, he refused, and then received death threats. But in his hearing, then, he stated that there were gunshots fired at him, that he was hit in the stomach with a rifle, and then there were death threats. And in that case, the 9th Circuit said that these lack of details should not form the basis of an adverse credibility finding. And the reason for that is simply that an asylum hearing is your opportunity to expand upon statements that were previously made. And that is why, in this particular case, she originally stated everything regarding her arrest, but then later on, before the actual final hearing, she did submit a supplemental declaration specifically detailing the harm, the physical harm that she suffered while in detention. So there is a fine line between elaborating on something you mentioned in the first declaration and then adding a harm. So what I perceived from what the IJ and BIA said here was that she didn't describe any physical harm in the first declaration, and then in her second declaration, in her testimony, she described a beating from a female agent. And then only in her second declaration did she describe a beating from prisoners. Now, why isn't that an additional harm as opposed to something new that she's adding, like a different thing that actually enhances her claim? Yes, Your Honor, and that's why I mentioned the Lopez-Reyes case, because in that case, he didn't mention any physical harm either in his declaration. He just said that he was stopped by guerrillas and received death threats. And then later on during the hearing, he stated, oh, yes, I was hit in the stomach with a rifle. And in that case, the Ninth Circuit did say that particular lack of detail. Because he mentioned the fact that he was stopped and the death threats, the very fact that he didn't particularly mention I was hit in the stomach with a rifle, that that should not be used for an adverse credibility finding. And that is why I believe that it's similar in this case, wherein she didn't mention her arrest and her detention, but she simply didn't mention the actual physical harm that she suffered in her original declaration. There were some other things that the I.J. pointed to. I have some problems with some of what he pointed to. Male? The I.J. was a male? Yes, sir. Yes. What he pointed to, but I'll save those for counsel for the government. But the one that is troubling is this explanation of her passport and why she was leaving. She was pretty clear that she was going to the United States to be a student. And I think what the impression that the I.J. came away with was that was why she was leaving China. And this other was sort of afterthought. Your Honor, just to be clear, are you referring to simply the timing of the passport instead of just simply the actual intention? Well, she got the passport before the date of the church raid. So she was coming to the United States anyway. Am I right? Is that what you're referring to? Yeah. Yes, Your Honor. And that was addressed in our brief as well as if you look in the transcripts, it's the sequence of questions, the order in which they were asked, and kind of the judge's somewhat general questioning. I think that leads to a little confusion. The judge asked the petitioner, well, why did you get a passport? And she says, well, to leave the country, which of course is why everyone would get a passport is to leave the country. And then she says, why would you want to leave the country? And then she mentioned, oh, it's because I was afraid and I was persecuted and et cetera. And then that's when the judge then brought up the fact that, hey, wait a minute, you got your passport before that. And then she explained, well, the reason I got the passport back in August 2006 is at that time my family was planning a trip to Korea. And what I'm saying here is, Your Honor. But her father sent money to a school. Right. And that's later on. This is simply just talking about the reason for the passport. Yeah. The school is the visa, which is something different than the passport. Well, I understand it's different. That's what she was pointing out. But why would she be getting a visa? Well, I mean, the simple fact is that, as she testified to, is that she was afraid to stay in China. And so then she had the intention to leave China. And the F-1 visa, the student visa, was her mechanism by which she could leave the country. So now I'm confused. She got a passport. Yes. Because they were going to South Korea for a trip. Right. And then she applied for the student visa, and her father put money down on a school. And that was to disguise the fact that she was leaving China because she was being persecuted? Well, I believe in this case, Your Honor, I believe it's a dual intent. I mean, I believe that she did have the intent to be a student here. I mean, she did attend school, I believe, for a few months or so. But I think the main reason is simply just to leave the country because she was so afraid that she might be persecuted further. So I can see how the IJ could have made a finding that she got the passport to go to North Korea and later got the visa to go to school. But he didn't credit her explanations. He seemed to think that he says it outright. I don't know if this is age discrimination or because she's a young girl. I don't know. But he says, well, what I see is a 22-year-old girl who wants to come here and stay in the United States. And he somehow seemed to discredit her. But we have to find that substantial evidence in the record compels a different conclusion. Right. And remember, you know, under the law, you're supposed to give a person an opportunity to explain any discrepancies. And that's why when he asked her the question, she explained about the trip to South Korea and then later on about her father putting money down. And so this is her explanation. And there was nothing significant, but there was no demeanor finding from the judge saying, oh, she paused or she looked up or she was somehow nervous and maybe perhaps making up some answer that she, at least from what we see in the record, she just answered his question outright. And the judge simply doesn't really explain, as Your Honor said, why he thought that she's just a 22-year-old person who wanted to come to the United States. He didn't explain why he felt that and did not credit her explanations. Okay. Do you mind if we serve him a minute? Yes, Your Honor. Thank you. Hello again, Your Honors. Joseph O'Connell again on behalf of the Respondent, the Attorney General. Your Honors, this is a straightforward credibility case, and the agency's decision is adequately supported by more than enough evidence to withstand judicial review in this case. Here the agency relied on three or four very serious omissions with regard to Mrs. Liu's declarations as well as her testimony. If I could, I'd like to go back to that timeline Your Honor brought up to begin with. August 17, 2007, she files her first asylum application and affidavit. Now, there's something in between the first affidavit and the second affidavit. Four months after her first affidavit, she files a form. It's at 270 and 271 in the record. She files a form indicating that her application and the statement in support of that application is correct and complete, that there are no omissions in that first affidavit. She signs that form. We have law that says if you add detail when you're in a hearing, which does, and I've read the transcript, and she does seem to be explaining that she could answer truthfully, in her view at that point, it was complete. And by the way, it's a compound statement. It says accurate, complete, and truthful. Correct. And particularly in a question posed in the course of an oral question, one would object and say that's compound. Right? Correct. You'd say, well, you're expecting them to parse it and say, well, it's truthful and it's complete. Your Honor, are you talking about the hearing or the form? I'm talking about the hearing. I understand the form asks you to swear that it's true. The form says are there any omissions? Yes. It says no. Not only that, and you can say it's adding detail, but I would disagree with that entirely, because it's not just adding detail. It's changing the fundamental basis of her asylum plan, because as Your Honor knows, asylum requires a well-founded fear of future persecution. Now, when you establish past persecution, which is what her additional allegations include, which is this physical beating by the Chinese police and this physical beating by the other inmates, among other things which I'll get to, but when you do that, you change her claim, and she's basically saying, well, now I have this presumption of past persecution, or I have this past persecution which raises this presumption of future persecution. You're changing the claim here. Well, I mean, we know that in terms of the other, but I can assure you she didn't know that. Now, whether counsel strategically did it for those reasons, that's another thing. But I've listened to her testimony, I mean, read the testimony, and she's smart, but she's not. It's also suspect. Those subtleties. Yeah. It's suspect when you look at the timing. I think the day of her merits hearing is when she filed that second affidavit. Okay. So, I mean, that's the very day of her merits hearing she filed that second affidavit. Okay. Okay. But here's the thing. Let me get to something. Okay. Because the EIJs have to hear these stories, and they pick up. There's no description in the record, as far as I know, by the EIJ about demeanor or... No demeanor findings. No. And so we're looking strictly at the testimony. So here's a passage. Okay. This is the issue of her mother being locked up. Right. Okay. So the progression of this testimony, which was relied upon by the EIJ, not all explicitly so. I'm reading from 101 in the transcript. Okay. So the judge is talking about her mother practicing religion. So just so I know, is your mom practicing a religion now? Yes. How many years has she been a Christian? Around six years. And is she active? Yes. She is still an active Christian. Does she go weekly? Not right now. Why not? She was locked up in jail right now. Right now she's locked up? Yes. And when did she get locked up? The middle of August 2007. And she hasn't been released yet? No. Okay. Now, it's the EIJ who asked those questions. We go to 107. The judge to Ms. Lu. On your amendment, you failed to reveal that your mother had been in custody for 18 months. And you said because it was your own application. And then I pointed out to you, well, that you wrote about your grandmother, and you said that that wasn't your grandmother. That was just a custom. And parenthetically, by the way, in her declaration, she calls her neighbor Grandma. Correct. Okay.  Right. It says Grandma Wong. That's what it says. Yeah. And that's the reason why you wouldn't put that your mother is in custody, ma'am. And she repeats. Because this application is for myself. So I just include the information about myself. IJ. So why are you testifying about it? Why are you bringing it up in testimony? Your attorney asked you these questions. Actually, the attorney didn't. The IJ did. Why are you going in this direction if you think it's only about yourself? Answer. Because the question was in regard of my mother. And ask where is my mom and what is she doing? Well, I understand. But why is that question being posed to you if it's not relevant in your mind? And the answer should have been, you'll have to answer that, Mr. IJ, because I don't know why you asked me that question. And yet it's turned around against her by the IJ. Could you please? Well, I understand. But why is that question posed if it's not relevant? Could you please rephrase the question? That was she. And the question was sorry. In the first asylum, Judge Fischer is correct, the first asylum declaration does talk about her neighbor, Grandma Wayne. Correct. It's almost as though the IJ didn't see that. Well, that's not exactly accurate. I can't explain the questioning. I can't do it. But I can address the omission in the declaration. Now, in her first and second declaration, she knew enough to include information about her mother. In fact, she said in both declarations, she said, my mother had been sterilized after the birth of my brother. And so she knew enough to include in both declarations. So why wouldn't she include that declaration? It was a preamble to why her mother sought Christianity. Correct. Which was the basis of her claim was religion. Correct. And the IJ was questioning about the bona fides, and we've seen these cases. Why suddenly did you become a Christian? And so the application says my mother became a Christian because of all of these crises in her life. And so then I decided to become a Christian. But, again, Your Honor, that doesn't explain. And she shifts to and explains consistently throughout that this is about her self now. Her mother was, you know, the one who brought her to Christianity. That was her explanation, but, again, the IJ wasn't required to credit that declaration. Again, there's no real reason why she didn't include the fact that her mother has been in jail for 18 months in either one of these declarations. That's a pertinent fact. But she might have been put in jail at the time of those declarations? I think she said to jail until August 2007. She wasn't. I thought it was. She filed her first application August 17, 2007, about the time. But, again, even her second declaration didn't include the fact that her mother had been in jail for the second declaration. I know where it is. When was it filed? April 7, 2009. Okay. Allegedly in jail that whole time and she doesn't include it in her declaration. Okay. So she put it in her declaration. Then what the IJ would have said was, well, it wasn't there. But there's no corroboration because there's no statement from the mother. We've seen those cases, too. Yeah, that's true. But, again, corroboration isn't this case. And, again, that doesn't explain her earlier omission that she was regarding the physical harm. Again, her second declaration doesn't include the fact that her mother was detained, a very relevant fact with regard to her asylum application. She gave an explanation, but the IJ wasn't required to accept that explanation. And it doesn't explain her physical harm omission in the first and second I'm sorry, the first affidavit and that following form, which affirmed her first affidavit. And that's not the only thing. There's other inconsistencies here. I've looked at them. There's some. I mean, again, think about it this way, Your Honor. If you say that you're entering the United States under the pretext of being a student, it's a pretext. Why do you go to Southern Illinois University for five months? Why don't you just come and file an asylum claim? We have law that says those documents can't be held against you because most people who are trying and are fleeing persecution don't have all their papers necessarily. Right. Those documents, Your Honor, but not the testimony. She said she was fleeing persecution. That's why she came here. In her testimony, she says, I had to leave the country. I left the country because I was afraid. Yeah. And so she wanted to come to the United States and go to school. So she did go to school. The IJ reasonably held that the persecution claim wasn't credible in that regard. He believed the fact that she wanted to come to the United States and go to school is understandable. He didn't believe her in the fact that she said that she was persecuted in the past. He said that she left, that counsel asked the respondent when she left the People's Republic of China and why, and her response was December 2006 because she had suffered persecution. And then he says that part, at first blush, that fact pattern could be considered credible. But after her responses to several of his follow-up questions and the contents of the ROP, what's that? Record of proceedings. Okay. The respondent's statement that she left because of persecution cannot be considered credible. So he's basing his determination not on discrepancies between the two asylum applications. He's basing it on what happened in her testimony. I would disagree with that interpretation, Your Honor. I would say that it is partially based on the fact that she couldn't explain it in her testimony. Again, he, the immigration judge specifically relied on those omissions between the first and second affidavit. You know, I think what could be happening here is, and this is sort of a sad observation, is the fact that, I mean, the country reports all support the notion that these house churches are being broken up in China, that people are getting persecuted for participating in the house churches and being detained for that and for practicing their Christian religion. That's a claim that's supported by the record. So maybe the IJs are seeing more and more of those claims and are trying to sift through which ones are true and which ones are not based on, you know, that they've just seen so many. And I know they must be seeing a lot of them, because I'm seeing a lot of them. Right? And so we know it's a valid claim. We know it's going on. But so it's, you know, how far does he go in trying to pick apart her claim? And how credible is he in what he says? The IJs, again, this Court has case law that says the IJs are in the best position to assess credibility. Only demeanor aspects. That's why Judge Fischer was asking you about that. But, again, if you look at that omission regarding the physical harm as a major omission, first and second affidavit, a major omission, it fundamentally changes the aspect of her claim. Okay. Is this pre- or post-real ID? This is post-real ID. Post-real ID. Okay. All right. You've exceeded your time. We've exceeded your time. Thank you. Thank you. Briefly, Your Honors, I just wanted to address the omission of the mother's detention. There was no mention in the record as to why the mother was detained. I think everyone assumed, oh, she must have been detained for attending another house church or such. But there's no mention of that. She may have been detained for, I don't know, not paying a parking ticket or a theft or something. But we don't know that. And so if there's an omission and we don't know why the mother was detained, then why is that relevant at all to this case? If she was arrested for not paying a parking ticket, not relevant to this case at all. And so I believe if you're talking about an omission, it's got to be relevant. And there's no evidence that that is relevant at all. Thank you. All right.  Lew v. Holder will be submitted.
judges: Noonan, Wardlaw, Fisher